**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| GARY ANDERSON, )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>)<br>MICHAEL J. ASTRUE, Commissioner )<br>of the Social Security Administration, )<br>)<br>Defendant. ) | 1:10-cv-00587-SEB-MJD |

**Entry Discussing Complaint for Judicial Review**

Gary Anderson ("Anderson") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **remanded for further proceedings.**

**I. Background**

Anderson filed an application for DIB on July 14, 2005, alleging an onset date of disability of June 24, 2004. His application was denied initially and upon reconsideration. His request for a hearing before an Administrative Law Judge ("ALJ") was granted and a hearing was conducted on April 7, 2009. Anderson appeared, accompanied by his attorney. Medical and other records were introduced into evidence. Anderson, two medical experts, and a vocational expert testified at the hearing. The ALJ issued a decision denying benefits on April 21, 2009. On April 2, 2010, the Appeals Council denied Anderson's request for review, making the ALJ's decision final. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Anderson met the insured status requirements of the Act through December 31, 2009; (2) Anderson had not engaged in substantial gainful activity since June 24, 2004, the alleged onset date; (3) Anderson had the following severe impairments: degenerative disc disease; sleep apnea; chronic obstructive pulmonary disease; history of transient ischemia attack; hypertension; diastolic dysfunction; prolongation of the left sural nerve; and obesity; (4) Anderson did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Anderson had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except: occasionally climbing ramps and stairs; no climbing of ladders, ropes or scaffolds; frequently balancing; and occasionally kneeling, crouching, and crawling; (6) Anderson was unable to perform any past relevant work; (7) Anderson was born on August 22, 1954, and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date, and he subsequently changed age category to closely approaching advanced age; (8) Anderson had at least a high school education and was able to communicate in English; (9) transferability of jobs skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Anderson was "not disabled," whether or not he had transferable job skills; and (10) considering Anderson's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Anderson could perform. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Anderson had not been under a "disability," as defined in the Act, from June 24, 2004, through the date of the ALJ's decision.

## II. Discussion

### A. Applicable Law

To be eligible for DIB, a claimant must prove he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. § 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4)

2

the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id*. The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B. Analysis

In this case, the ALJ determined that Anderson had severe impairments consisting of degenerative disc disease, sleep apnea, chronic obstructive pulmonary disease, history of transient ischemia attack, hypertension, diastolic dysfunction, prolongation of the left sural nerve, and obesity. The ALJ further determined that Anderson could perform light work[1] except he could only occasionally climb ramps and stairs, could not climb ladders, ropes or scaffolds, could frequently balance, and could occasionally kneel, crouch, and crawl. Anderson argues that the ALJ's decision is not supported by substantial evidence.

Specifically, Anderson argues that the ALJ erred in finding that 1) his arthritis in both knees was not a severe impairment, and 2) Anderson could stand or walk six hours in an eight hour day. He also argues that the ALJ should not have given controlling weight to the opinion of non-examining medical expert Dr. Boyce. The Commissioner responds that the ALJ properly determined Anderson's RFC in light of all of the evidence of record.

Anderson testified at the hearing that he could not work because of his difficulty breathing and his arthritis in both legs, jaws and his back. (R. at 504). He stated that when he exerted too much he became dizzy and blacked out. *Id.* He also testified that he could not sit very long because of the pain in his legs and back and that he could only stand in one place without support for about 10 to 15 minutes. (R. at 507). He testified that when he tried to roll the trash can out, he had to stop halfway to catch his breath and rest for half

---

[1]"Light work" is characterized as lifting a maximum of twenty pounds occasionally, with frequent lifting or carrying of up to ten pounds, standing or walking off and on for a total of six hours during an eight-hour workday, intermittent sitting, and using hands and arms for grasping, holding and turning objects. *Clifford v. Apfel*, 227 F.3d 863, 869 n.2 (7th Cir. 2000) (citing 20 C.F.R. § 404.1567(b) and Social Security Ruling 83-10)).

3

an hour before taking the second trash can. (R. at 506).

Anderson points out that his treating and examining physicians acknowledged that he had arthritis in his knees. Treating physician Dr. Moran reported that Anderson had arthritis in both knees (R. at 297), examining consulting physician Dr. Levine indicated that Anderson had arthritis in his knee (R. at 193), examining consulting physician Dr. Houser reported that Anderson had "O.A. knees" and right knee osteoarthritis (R. at 267-68), and examining consulting physician Dr. Kahn reported that Anderson had bilateral knee osteoarthritis (R. at 275). Anderson argues that because these examining physicians found that Anderson had arthritis in one or both knees and restricted him to standing and walking two hours a day, his arthritis should have been determined to be a severe impairment with limitations based on that condition.

The ALJ supported his finding that Anderson's arthritis was not a severe impairment by stating that such a finding was consistent with the testimony of internal medicine medical expert Dr. Boyce. (R. at 20). As to Anderson's osteoarthritis, Dr. Boyce testified that "I should mention that they mention osteoarthritis of the knees, but I didn't really see anything in terms of x-rays, et cetera, objective evidence to address the knees so I really cannot comment with regard to that." (R. at 493). Dr. Boyce did acknowledge that Anderson's arthritis of the lumbar spine was documented in the record. (R. at 497).

The ALJ stated that the record did not contain appropriate objective diagnostic testing of Anderson's knees to demonstrate the presence of the arthritis. (R. at 20). The ALJ, however, failed to acknowledge the evidence which supported a finding that Anderson had arthritis in his knees. In particular, consulting examining physician Dr. Houser noted that Anderson had had imaging of his knees and had been told that he had osteoarthritis. (R. at 260). Examining consulting physician Dr. Khan also noted that older x-rays "apparently" have demonstrated arthritis in both knees. (R. at 273). In further explaining his finding that arthritis of the knees was not severe, the ALJ reasoned that multiple treating sources reported that Anderson was neurologically intact with a normal gait. (R. at 20). When discussing Anderson's degenerative disc disease later in his decision, however, the ALJ acknowledged that consulting examining physicians Dr. Houser and Dr. Khan had reported an abnormal gait. (R. at 20, 22). Nonetheless, even if a number of reports indicated that Anderson had a normal gait, there is no medical support for the inference that being "neurologically intact with a normal gait" translates to "no arthritis" and "no difficulty standing and walking."

Although the ALJ need not discuss every piece of evidence, he may not "select and discuss only that evidence which favors his ultimate conclusion." *Smith v. Apfel,* 231 F.3d 433, 438 (7th Cir. 2000) (ALJ erred when he decided that an x-ray taken 10 years ago showing the beginnings of degenerative disease was sufficient to find no disease). In *Smith*, the ALJ discredited the treating physician's diagnosis of arthritis based on the lack of objective evidence. *Id.* at 437. There was a ten year old x-ray that showed the onset of degenerative disease in the knees. The Seventh Circuit held that the ALJ failed to develop the record by obtaining recent x-rays and that, therefore, the lack of objective evidence was not a sufficient basis on which to discredit the treating physician's opinion. *Id.* at 438.

4

Similarly, in this case there are references to imaging studies having been completed in the past but they are not part of the record, and the lack of objective evidence was the ALJ's basis for finding no osteoarthritis of the knees and for not including more severe restrictions on Anderson's ability to sit, stand, and walk.

In the face of the opinions by examining physicians and treating physicians, along with Anderson's reported difficulties walking and standing, and the reference to old objective tests that revealed arthritis, the ALJ's explanation as to why he did not find arthritis to be a severe impairment causing functional limitations is not supported by substantial evidence. On remand, to the extent the ALJ is troubled by a lack of objective evidence, he shall obtain copies of the old x-rays or order appropriate imaging tests. *See Smith,* 231 F.3d at 437-38 ("Although a claimant has the burden to prove disability, the ALJ has a duty to develop a full and fair record. Failure to fulfill this obligation is 'good cause' to remand for gathering of additional evidence. *We fail to see how the ALJ could have properly assessed the extent of [plaintiff's] arthritis without more updated X-rays.*") (internal citations omitted)(emphasis added).

Anderson next argues that the opinion of treating physician Dr. Moran should have been given controlling weight because it was not inconsistent with opinions of three examining consulting physicians, Dr. Levine,[2] Dr. Houser, and Dr. Khan.[3] He challenges the ALJ's decision to give greatest weight to the opinion of the medical expert, an opinion that was inconsistent with that of all examining physicians. "A treating physician's opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." *Campbell v. Astrue,* 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); 20 C.F.R. § 404.1527(d)(2).

Anderson also points out that Social Security regulations explain that "[g]enerally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1); *see Haynes v. Barnhart,* 416 F.3d 621, 631 (7th Cir. 2005) (citing 404.1527(d)(1) for general proposition as to weight given to examining physicians over nonexamining ones). "An ALJ must offer good reasons for discounting a treating physician's opinion." *Campbell,* 627 F.3d at 306 (internal quotation omitted).

Treating physician Dr. Moran completed a Medical Assessment of Ability to Do Work-Related Activities on February 12, 2008, in which he opined that Anderson could sit,

---

[2]On September 15, 2005, consulting examining physician Dr. Levine opined that Anderson was able to stand/walk for at least 2 hours in an 8 hour day and could lift/carry less than 10 pounds frequently or over 10 pounds occasionally. (R. at 193). Dr. Levine listed Anderson's impairments as COPD, back pain, ulcer, arthritis in knee, and chest pain. *Id.*

[3]On December 5, 2008, consulting examining physician Dr. Khan reported that Anderson's gait was slow and stable appearing. (R. at 275). Dr. Khan noted Anderson having a left-sided limp. *Id.* Dr. Khan listed Anderson's impairments as chronic obstructive pulmonary disease, bilateral knee osteoarthritis, degenerative disk and spine disease, and history of headaches and hepatitis C. (R. at 275-76).

stand or walk zero hours total in an eight hour workday. (R. at 297). Dr. Moran reported that the medical findings that supported his conclusions were: general weakness of all muscles; arthritis in both knees; and shortness of breath. *Id.* The ALJ considered the opinion of Dr. Moran, but determined that it was "not supported by the objective medical evidence, clinical findings, or treatment history demonstrated by Dr. Moran's own treatment notes or those of other treating sources." (R. at 29). The ALJ also reasoned that Anderson's activities of daily living were inconsistent with the severe restrictions assessed by Dr. Moran. *Id.* To the extent the lack of "objective medical evidence" referenced was related to x-rays of the knees, that rationale has already been rejected. The court agrees that in light of Anderson's own testimony, Dr. Moran's opinion that Anderson could sit, stand or walk "zero hours" is not supported. To that extent, the ALJ's reasoning is supported by substantial evidence.

Consulting physician Dr. Houser examined Anderson on June 16, 2008. (R. at 259-272). At that time, Dr. Houser noted that one of Anderson's chief complaints was knee pain. (R. at 260). Dr. Houser noted that:

> In 1982 he sustained injury to his right knee with a moving vehicle accident. In 2002 or 2003 his right knee worsened. In 2007 his left knee worsened. He has had imaging of his knees and told he has osteoarthritis. He is bothered when he gets up from a sitting position out of a chair, climbing stairs. He has morning stiffness until his pain medication starts to work.

*Id.*

On examination, Dr. Houser reported that Anderson had an antalgic gait with slow speed, but good sustainability and stability. (R. at 263). Anderson was unable to walk on toes, heels, tandem walk, or squat. *Id.* Straight leg raising was bilaterally positive. *Id.* Dr. Houser noted that Anderson had joint pain at the medial side of the right knee and in the patellofemoral area there was pain in the right knee with flexion. *Id.* Muscle strength in the right knee was 4/5. Dr. Houser reported Anderson as having reduced range of motion in his knee flexion. (R. at 265). Dr. Houser opined that Anderson "would not be able to stand or walk for 2 hours in an 8 hour day both because of musculoskeletal and COPD problems." (R. at 263). In a separate report based on the same examination, Dr. Houser further opined that Anderson was able to sit or stand 15 minutes at a time, was able to walk without interruption for 10 minutes, was able to sit and stand a total of 3 hours in an 8 hour workday, and was able to walk 2 hours in an 8 hour workday. (R. at 267).[4]

The ALJ gave little weight to the opinion of Dr. Houser. The ALJ stated that "although this opinion may have some merit based on Dr. Houser's clinical findings, it does not correlate with [sic] record as a whole." (R. at 29). The "record as a whole" included the findings by the examining and treating physicians, all of whom submitted that Anderson had greater restrictions in his ability to walk, stand and sit than those found by the ALJ. Even the State Agency physicians opined that Anderson could stand and/or walk for a total of at least 2 hours in an 8 hour workday (but less than 6 hours in an 8 hour workday, as they did

---

[4]All of Dr. Houser's restrictions place Anderson at the sedentary level, not light, *i.e.*, not able to stand or walk for a total of 6 hours in an 8 hour workday.

6

not check that "box."). (R. at 215). It is unclear what the ALJ means by "inconsistent with the record as a whole" when he acknowledges that, for instance, Dr. Houser's opinion had merit based on his own clinical findings and Dr. Boyce is the only medical source who indicated Anderson could stand and/or walk six hours in an eight hour day.

As noted, the ALJ gave greatest weight to the opinion of non-examining medical expert Dr. Boyce. Dr. Boyce testified that Anderson could stand and/or walk a maximum of six hours in a day, had no restrictions in terms of sitting other than normal breaks, could lift and/or carry 20 pounds occasionally and 10 pounds frequently, and had other postural limitations. (R. at 498). Dr. Boyce stated that he based his opinion primarily on Anderson's lumbar disk disease. *Id.* The ALJ adopted this RFC in its entirety. (R. at 23-29). The ALJ reasoned that Dr. Boyce's opinion was "well supported by the objective medical evidence and clinical findings of multiple treating sources as well as the treatment history." (R. at 29). In addition, the ALJ found that Dr. Boyce was able to review the complete medical evidence and his opinion was "well explained during the hearing." *Id.*

During the hearing, Dr. Boyce discussed the State Agency RFC in which Dr. Luiz restricted Anderson to standing and walking at least two hours and sitting six hours. (R. at 495-96, citing R. at 215). Dr. Boyce noted that Dr. Luiz probably followed the lead of examining consulting physician Dr. Levine, who opined after he examined Anderson that Anderson could stand or walk for at least two hours a day. (R. at 496, citing R. at 193). Dr. Boyce testified that the only problem he had with that RFC is that he "did not see the objective reason for restricting to two hours of standing and walking." *Id.* And as noted above, Dr. Boyce stated he "really cannot comment with regard to" Anderson's osteoarthritis of the knees. (R. at 493). Because the only problem Dr. Boyce had with the finding that Anderson could stand or walk two hours a day was the lack of objective evidence, that rationale could well change after additional objective evidence is obtained on remand.

Anderson argues that the ALJ's finding that he could stand or walk for six hours in an eight hour day is not supported by substantial evidence. It is true that no physician other than medical expert Dr. Boyce opined that Anderson could stand or walk six hours in an eight hour day. This issue is pivotal. If Anderson were found to be able to do sedentary work or less, at the time he was closely approaching advanced age, he would be "disabled" pursuant to Medical Vocational Guideline 201.14. *See* Appendix 2 to Subpart P of Part 404, Rule 201.14. The lack of objective evidence is the basis for the ALJ's conclusion in this regard, and this finding has been discredited above.

The ALJ's finding that Anderson did not have restrictions in his ability to stand and walk was based in large part on a lack of old or current x-rays. Under the circumstances of this case, the ALJ should have ordered such x-rays. *See Smith*, 231 F.3d at 438. In addition, in terms of medical source opinions, the ALJ's RFC finding was based on the opinion of the non-examining medical expert Dr. Boyce. All of the other medical sources opined that Anderson could, at best, stand and/or walk two hours in an eight hour day, and yet the ALJ concluded that all of the other medical source opinions were inconsistent with the record as a whole. Rather, it appears that the opinion of Dr. Boyce was inconsistent with the record as a whole. In this regard, the court cannot be confident that the ALJ considered the important evidence of record, nor can it trace the path of the ALJ's

7

reasoning. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (an ALJ must "sufficiently articulate his assessment of the evidence to assure us that [he] considered the important evidence . . . [and to enable] us to trace the path of [his] reasoning.") (internal quotation omitted).

### III. Conclusion

For the reasons set forth above, the ALJ's conclusion that Anderson was not disabled is not supported by substantial evidence. The court, therefore, is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand). Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 08/23/2011

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana